1
2
3
4
5
6
7

8                           UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

11    JOSEPH N.,                                Case No.:  3:21-cv-01608-AHG

12                              Plaintiff,      **ORDER RESOLVING JOINT**
                                                **MOTION FOR JUDICIAL REVIEW**
13    v.                                        **OF FINAL DECISION OF THE**
                                                **COMMISSIONER OF SOCIAL**
14    KILOLO KIJAKAZI, Commissioner of          **SECURITY AND AFFIRMING**
                                                **DECISION OF COMMISSIONER**
15    Social Security,

16                                              **[ECF No. 17]**

17

18                              Defendant.

19
20
21
22
23
24
25
26
27
28

Plaintiff Joseph N. ("Plaintiff") filed this action on September 14, 2021, seeking review of the Commissioner of Social Security's ("Commissioner") denial of his application for Social Security Income ("SSI") benefits. ECF No. 1. The parties consented to proceed before a Magistrate Judge on September 20, 2021. ECF No. 7. Pursuant to the Court's Order, the parties filed a Joint Motion for Judicial Review on May 1, 2023, stating their positions on the disputed issues in the case. ECF No. 17. The Court has taken the Joint Motion under submission without oral argument.

For the reasons set forth below, the Court **AFFIRMS** the Commissioner's denial of benefits to Plaintiff.

## I. BACKGROUND

Plaintiff was born January 10, 1959. ECF No. 10, Administrative Record ("AR") at 145. Plaintiff's past relevant work has been as a security guard, DOT code 372.667-034, light and semiskilled with an SVP of 3; and bagger, DOT code 920.687-014, medium and unskilled with an SVP of 2. AR at 223.

On May 24, 2019, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability due to the impairments of neck pain, spondylosis, arthritis, post-neck surgery with hardware in place, headaches, and bilateral shoulder pain, with an alleged disability onset date of May 4, 2019. AR 57-65, 147-52. The Commissioner denied Plaintiff's SSI claim upon initial review on August 9, 2019, and again upon reconsideration on February 11, 2020. AR 57-88, 95-99. On April 8, 2020, Plaintiff, through his appointed representative, requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 5, 2020. AR 36-56, 102-04. Plaintiff was represented by counsel at the hearing and provided testimony. *Id.* A vocational expert ("VE") also testified at the hearing, and Plaintiff's counsel had the opportunity to cross-examine the VE. AR 49-56.

On November 20, 2020, the ALJ issued an unfavorable decision denying Plaintiff's SSI application, finding he had not been under a disability from his alleged onset date of May 4, 2019, through the date of the decision. AR 22. Plaintiff requested review of the ALJ's decision by the Appeals Council on October 13, 2020. AR 1-3. When the Appeals

Council denied Plaintiff's request for review on July 26, 2021, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(h). Plaintiff timely appealed the denial to this Court for federal judicial review on September 14, 2021. *See* ECF No. 1; AR 2; 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d at 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an

administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

## III.  SUMMARY OF ALJ'S FINDINGS

### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920;[1] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if

---

[1] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3, 2016 SSR LEXIS 4 n.27 (S.S.A. 2016) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision").

not, a finding of nondisability is made and the claim is denied. *Id. See also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsburry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[2] 96-9p, 1996 WL 374184, at *1 (S.S.A. 1996). It reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

---

[2] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsbury*, 468 F.3d at 1114-15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

### B. The ALJ's Application of the Five-Step Process in This Case

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of May 24, 2019. AR 24. At step two, the ALJ determined that Plaintiff had the severe impairment of degenerative disc disease of the cervical spine, status/post fusion. AR 24. The ALJ also discussed other possible

impairments based on Plaintiff's medical history and complaints, including headaches, finger pain caused by subluxation of the lateral band on the radial side of the PIP joint, a varicose vein on his right lower leg, hypertension, mental symptoms, and shoulder pain, but found the record did not support a finding that any such possible impairments were severe. AR 24-25. Pertinent to the issue at hand here, the ALJ specifically found that Plaintiff's "history of bilateral shoulder pain" did not cause more than "mild restrictions in work related functioning," and therefore, any medically determinable shoulder impairment would be non-severe. AR 25.

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments in the Listing, noting that he had considered Listing 1.04 related to disorders of the spine in particular, but that "there is no evidence of the nerve root compromise required of the Listing." AR 25.

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined by 20 CFR § 416.967(b), with certain exertional and postural limitations. AR 25. Specifically, the ALJ determined that Plaintiff:

> . . . can lift and carry 20 pounds occasionally and 10 pounds frequently, [and can] stand and walk for 6 hours of an 8-hour day. He can sit for six hours in an 8-hour day. He cannot climb ladders or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. He cannot crawl. He can perform occasional overhead reaching and occasional rotation and flexion of the cervical spine.

AR 25.

At step four, based on Plaintiff's RFC and the testimony of the vocational expert, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a security guard, both as actually performed and as generally performed, because this work "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." AR 30. Accordingly, the ALJ found Plaintiff was not disabled at step four of the disability analysis and did not proceed to step five.

## IV.   DISCUSSION

Plaintiff's sole claim of error on appeal is that the ALJ erred at step four of the disability evaluation by finding that Plaintiff could perform his past relevant work as a security guard. Plaintiff contends that this past relevant work is precluded by the exertional limitation in his RFC limiting him to only occasional overhead reaching, because the Dictionary of Occupational Titles ("DOT") indicates that the security guard job requires frequent reaching. Thus, Plaintiff argues that the vocational expert's testimony at the hearing before the ALJ that a hypothetical person with Plaintiff's RFC could still perform the security guard job was in apparent conflict with the DOT, and the ALJ committed reversible error by failing to resolve the conflict. ECF No. 17 at 4-13.

### A. Legal Standards for Step-Four Analysis

As discussed above, at step four, the ALJ must consider whether the plaintiff has "the residual functional capacity to perform the requirements of his past relevant work[,]" which is defined as work performed either as the claimant "actually performed it" or as it is "generally performed in the national economy" within the past 15 years. *See* 20 C.F.R. §§ 416.920(f), 416.960(b)(1)-(2). The plaintiff bears the burden of demonstrating that he can no longer perform his past relevant work. 20 C.F.R. § 416.920(e); *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). However, "[a]lthough the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Id.* To do so, the ALJ must compare the claimant's RFC to the physical and mental demands of the past relevant work. *Id.*; 20 C.F.R. §§ 416.920(e)-(f), 416.960(b). If the claimant retains the RFC to perform *either* "the actual functional demands and job duties of a particular past relevant job" *or* "the functional demands and job duties of the occupation as generally required by employers throughout the national economy[,]" then he will be found not disabled. *Pinto*, 249 F.3d at 844; SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982).

Social Security Ruling 00-4p explains how ALJs must consider and incorporate the testimony of a vocational expert ("VE") into the disability determination at step four. In

conducting the step-four analysis, the ALJ should "rely primarily" on the DOT "for information about the requirements of work in the national economy" but may also use VE testimony "to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). Relevant to Plaintiff's claim of error here, when a VE "provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE [] evidence and information provided in the DOT." *Id.* at *4. In a situation where a possible conflict arises, the ALJ must "ask the VE [] if the evidence he or she has provided conflicts with information provided in the DOT[,]" and, if the VE evidence "appears to conflict with the DOT," the ALJ "will obtain a reasonable explanation for the apparent conflict." *Id.* Moreover, the ALJ "must resolve" any conflict between vocational evidence provided by a VE and information in the DOT before relying on the VE evidence to support a finding of non-disability. *Id.* The ALJ "will explain in the determination or decision how he or she resolved the conflict" and "must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.*

Although VE testimony "generally should be consistent" with the DOT, neither the DOT nor VE evidence "automatically 'trumps' when there is a conflict." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (quoting SSR 00-4p at *2). Consequently, the ALJ has a duty to "first determine whether a conflict exists" and, if a conflict is present, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153; *see also id.* n.17 (noting that "SSR 00-4p gives examples of several reasonable explanations for deviating from the [DOT,]" including that the DOT "does not provide information about *all* occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations.").

\\

\\

**B. The ALJ's Consideration of VE Testimony at Step Four**

During the hearing, the ALJ posed a hypothetical question to the VE regarding whether a person of the same age and with the same education and prior work experience as Plaintiff could perform any of his past work, assuming the limitations of being able to lift up to 20 pounds occasionally and 10 pounds frequently, being able to stand and walk six hours out of an eight-hour day or sit six hours out of an eight-hour day, being unable to climb ladders or scaffolds and unable to crawl, and being able to occasionally stoop, crouch, kneel, or climb stairs. AR 50. These limitations match the ones that the ALJ later included in his ultimate RFC determination, except that it does not contain the limitation to only occasional overhead reaching. *See* AR 25. The VE responded that the security guard job would "remain available within that hypothetical." AR 50. The ALJ then posed a second hypothetical to incorporate the limitation to only occasional overhead reaching. To provide complete context for Plaintiff's claim of error, the Court will include the subsequent colloquy in full:

> Q     All right, thank you. The second hypothetical [I'd] like you to assume limitations of first hypothetical. Add to that that the hypothetical person would be limited in lifting to ten pounds occasionally or frequently. No, I'm sorry let me change that to assume limitations in the first hypothetical. Add to that that the hypothetical person would be limited in overhead reaching. Assume that they could do so occasionally. With that additional limitation could this hypothetical person do the Claimant's past work as security guard?
> A     I'm sorry, Your Honor, did you remove the maximum lifting of ten pounds? And so it's the first hypothetical with --
> Q     Yeah.
> A     -- only the adjustment overhead reaching with the left upper --
> Q     Yes, correct.
> A     -- extremity? Yes, the past relevant work would -- as a security guard would remain available.

AR 50-51.

With the addition of the "occasional overhead reaching" limitation, the second hypothetical matches the ALJ's ultimate RFC determination in this case. AR 25. Thus,

based on the VE's testimony that a hypothetical individual with the same background, age, and limitations as Plaintiff would be able to perform his past relevant work as a security guard, the ALJ found that Plaintiff remains able to perform that job "as actually and generally performed." AR 30. The ALJ further found "that the vocational expert's testimony is consistent with the DOT in issues the DOT addresses[,] but in any issues not addressed by the DOT, such as overhead reaching and flexion and rotation of the cervical spine, it is based on his professional expertise. Thus the undersigned accepts it in accordance with SSR 00-4P." AR 30.

### C. Analysis

Plaintiff's argument in support of his claim of error is twofold. First, Plaintiff contends that there was "confusion" during the hearing about the limitations in the second hypothetical question the ALJ posed to the VE, which casts doubt on whether the ALJ's ultimate RFC determination matches the hypothetical. ECF No. 17 at 5-6. Plaintiff argues that the ALJ's purported failure "to properly set forth the limitations during the hypothetical" is reversible error. *Id.* at 6 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant")).

Second, Plaintiff notes that the DOT listing for the security guard job states that the job requires frequent reaching, which he argues is inconsistent with the VE's testimony that a hypothetical claimant with his RFC—limiting him to only occasional overhead reaching—would be able to perform the security guard job as generally performed. *See* DOT 372.667-034, 1991 WL 673100. Consequently, Plaintiff contends that the VE's testimony poses an apparent conflict with the DOT listing, and the ALJ committed reversible legal error by failing to "elicit a reasonable explanation for the conflict that exist[ed] between the DOT and the vocational expert" testimony, as required by SSR 00-4p. ECF No. 17 at 9-12.

In response, Defendant argues that first, Plaintiff "waived his argument because he did not raise it with the ALJ at the hearing when the VE testified, despite being represented

by counsel and having the opportunity to do so." *Id.* at 13. Further, even if the Court does not find Plaintiff waived the argument, Defendant argues Plaintiff's contention that "overhead reaching precluded him from performing his past relevant work as a security guard" would not constitute reversible error in any event because Plaintiff "fails to address the security guard occupation as he actually performed it." *Id.* at 14; *see also* AR 30 (the ALJ finding that Plaintiff could perform the security guard position both as generally and actually performed). Therefore, Defendant contends any error the ALJ committed by finding that Plaintiff can perform the job as generally performed would be harmless, because a finding of non-disability would still be warranted if Plaintiff can perform the job as actually performed.

The Court will address Defendant's waiver argument first before turning to the merits of Plaintiff's claim of error.

### i. Waiver

Whether a plaintiff must exhaust all issues at the administrative level to preserve them for judicial review in the Social Security appeals context is not a straightforward question. In the Ninth Circuit, the general rule has long been that "at least when [Social Security] claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). One year after *Meanel* was decided, however, the Supreme Court ruled that claimants are not required to exhaust issues in a request for review by the Appeals Council to preserve them for judicial review. *Sims v. Apfel*, 530 U.S. 103, 107-12 (2000). The Ninth Circuit had the opportunity to revisit the *Meanel* holding in light of *Sims* in *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2017). There, the Ninth Circuit explained that the Supreme Court had expressly limited the *Sims* ruling by noting that "[w]hether a claimant must exhaust issues before the ALJ is not before us." *Id.* at 1109 (quoting *Sims*, 530 U.S. at 107). Accordingly, the *Shaibi* court held that "[i]n light of the Court's express limitation on its holding in *Sims*, we cannot say that that holding is 'clearly

irreconcilable' with our decision in *Meanel*, and *Meanel* therefore remains binding on this court with respect to proceedings before an ALJ." 883 F.3d at 1109.

Therefore, following *Shaibi* and applying the still-good rule from *Meanel*, the Ninth Circuit has issued "multiple [] unpublished decisions" finding waiver where a plaintiff who was represented by counsel below "failed to challenge particular aspects of the VE's testimony during administrative proceedings." *Razmik Z. v. Saul*, No. 2:19-CV-08970-KES, 2020 WL 3440563, at *3 (C.D. Cal. June 23, 2020) (collecting cases); *see, e.g.*, *Frugoli v. Berryhill*, 733 F. App'x 907, 907-08 (9th Cir. 2018) (finding that the plaintiff had forfeited a similar argument that the ALJ failed to resolve a "facial conflict" between VE testimony, the DOT, and the Occupational Outlook Handbook, because the plaintiff "was represented by counsel before the ALJ, and did not raise this argument."); *Hurtado v. Berryhill*, 749 F. App'x 663, 664 (9th Cir. 2019) (noting that the issues raised on appeal "were presented for the first time in the district court[,]" and holding that because the plaintiff "did not raise either issue, present any evidence, or challenge the vocational expert's testimony at the administrative hearing, those arguments are forfeited."); *Mojarro v. Berryhill*, 746 F. App'x 672, 675 (9th Cir. 2018) (finding the plaintiff "waived his argument that he could not perform the jobs identified by the [VE] due to his eyesight or hearing by failing to challenge this during the administrative proceeding.").

However, the Court is reticent to take the same tack here for two reasons. First, since the Ninth Circuit affirmed that *Meanel* remains good law in its *Shaibi* decision, the Supreme Court issued yet another ruling that calls into question the propriety of an issue-exhaustion requirement in the Social Security context. *See Carr v. Saul*, 141 S. Ct. 1352 (2021). In *Carr*, the Supreme Court rejected an issue-exhaustion requirement for Appointments Clause challenges in proceedings before the ALJ. 141 S. Ct. at 1360-62. Granted, the key considerations underlying the *Carr* holding—that agency adjudications "are generally ill suited to address structural constitutional challenges" and that there is a "futility exception to exhaustion requirements"—do not apply to the issue before the Court now, *i.e.*, whether there was an apparent conflict between the VE testimony and the DOT.

*Id.* at 1360-61. Nonetheless, much of the dicta in *Carr* concerns the general principle that "the rationale for requiring issue exhaustion is at its greatest when the parties are expected to develop the issues in an adversarial administrative proceeding, but the reasons for a court to require issue exhaustion are much weaker when an administrative proceeding is not adversarial." *Id.* at 1359 (quoting *Sims*, 530 U.S. at 110) (internal quotations omitted). Moreover, although the *Carr* Court agreed with the Commissioner that ALJ hearings are "relatively more adversarial" than Appeals Council proceedings, the Court also noted that "[m]uch of what the *Sims* opinion said about Appeals Council review [being non-adversarial] applies equally to ALJ proceedings[,]" including that the ALJ has a duty to investigate the facts "and develop the arguments both for an against granting benefits" and that "the Commissioner has no representative before the ALJ to oppose the claim for benefits." *Carr*, 141 S. Ct. at 1359 (quoting *Sims*, 530 U.S. at 111). The Court emphasized that "the question nonetheless remains whether the ALJ proceedings at issue here were adversarial enough to support the 'analogy to judicial proceedings' that undergirds judicially created issue-exhaustion requirements[,]" ultimately holding that they were not sufficiently adversarial to find the claimant had waived his Appointments Clause challenge by failing to raise it below. *Carr*, 141 S. Ct. at 1360. Therefore, although the holding in *Carr* is limited to there being no issue-exhaustion requirement in the context of Appointments Clause challenges, the opinion at least calls into question whether proceedings before an ALJ are ever sufficiently adversarial to support the continued general application of the rule from *Meanel* that Social Security claimants who are represented by counsel "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." 172 F.3d at 1115. At the very least, the analysis requires more nuance than that rule statement suggests at first blush.

The second—and more compelling—reason the Court is reticent to find waiver in this case comes from the *Shaibi* decision. There, the plaintiff argued for the first time at the district court level on appeal that the VE's job number estimates during the administrative hearing below were unreliable because they deviated from the County Business Patterns

("CBP") published by the U.S. Census Bureau and the Occupational Outlook Handbook ("OOH") published by the Bureau of Labor Statistics, which, along with the DOT, are listed in the regulations as sources of job data of which the agency will take administrative notice when determining whether a job exists in significant numbers in the national economy. *Shaibi*, 888 F.3d at 1108; *see also* 20 C.F.R. § 404.1566(d). In finding that the plaintiff waived the argument by failing to raise it during administrative proceedings, the court explained in pertinent part that there was "no case, regulation, or statute suggesting that an ALJ must *sua sponte* take administrative notice of economic data in the CBP or the OOH. **It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises a conflict before the agency**. But Shaibi cites to no authority suggesting that the same is true for the CBP and OOH." *Shaibi*, 888 F.3d at 1109 (citing SSR 00-4p; *Lamear v. Berryhill*, 865 F.3d 1201, 1206-07 (9th Cir. 2017); and *Massachi*, 486 F.3d at 1152-54) (emphasis added). Similarly, in *Lamear*, the Ninth Circuit rejected the exact argument the Commissioner makes here—that is, that the claimant waived the argument that the ALJ failed to reconcile an apparent conflict between VE testimony and the DOT, because his "counsel during cross-examination [at the hearing before the ALJ] should have asked the VE to reconcile the DOT with his conclusion, and that counsel's failure requires us to affirm." 865 F.3d at 1206. Refusing to find waiver under the rule from *Meanel*, the Ninth Circuit explained that "[u]nlike the claimant in *Meanel*, Lamear raised this issue to the Appeals Council. And more importantly, our law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is *required* to reconcile the inconsistency.'" *Id.* (quoting *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015), and citing SSR 00-4p, 2000 WL 1898704, at *2, *4).

Therefore, although a finding of waiver may sometimes be warranted where a represented claimant fails to raise an issue before the ALJ, the *Shaibi* and *Lamear* opinions indicate that it is inappropriate to find waiver where the ALJ fails to investigate and resolve an apparent conflict between VE testimony and the DOT, in contravention of SSR 00-4p, whether or not the claimant raised the issue below. Because that is the precise issue raised by Plaintiff in this case, the Court will proceed to the merits of the claim.

### ii.  Plaintiff's claim of error

The Court first addresses Plaintiff's argument that there was "confusion during the examination as to whether the [overhead reaching] limitation applied to both upper extremities or just the left." ECF No. 17 at 5. The Court finds this argument unavailing. In the first hypothetical posed to the VE, the ALJ described the following limitations:

> Assume the hypothetical person could lift 20 pounds occasionally, 10 pounds frequently; stand and walk six hours out of an eight-hour day or sit six hours of an eight-hour day. Assume a hypothetical person should do no climbing of ladders or scaffolds, also should do no crawling but could occasionally stoop, crouch, kneel or climb stairs.

AR 50.

In the second hypothetical posed to the VE, the ALJ asked the VE "to assume limitations of first hypothetical. Add to that the hypothetical person would be limited in overhead reaching. Assume that they could do so occasionally." AR 51. Although there was some initial confusion regarding whether the ALJ wanted the VE to include a maximum lifting restriction of ten pounds in addition to the other limitations, the VE asked for and received clarification about which limitations were included in the hypothetical. AR 50-51. Therefore, the ALJ properly set forth all limitations and restrictions that were ultimately included in the RFC in the second hypothetical posed to the VE. That is all that was required. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("Hypothetical questions posed to a VE must set out *all* the limitations and restrictions of the particular claimant") (internal quotations and citation omitted); *Leach v. Kijakazi*, 70 F.4th 1251, 1255 (9th Cir. 2023) (explaining that "when the ALJ's question to a vocational

expert accurately describes the claimant's limitations[,] the ALJ ordinarily may rely on the expert's testimony" and, further, when "an ALJ accurately summarizes a claimant's limitations, we ordinarily must affirm (unless there is an unexplained, obvious conflict [between the VE's testimony and the DOT] that is consequential).").

Next, Plaintiff argues that the ALJ committed reversible error by failing to elicit an explanation from the VE regarding his testimony that a person who is limited to only occasional overhead reaching would still be able to perform the occupation of "security guard," as defined in DOT listing 372.667-034, when the job listing indicates that reaching is required "frequently." *See* 1991 WL 673100.

However, the DOT lists the "maximum requirements" of occupations as "generally performed, not the range or requirements of a particular job as it is performed in specific settings." SSR 00-4P, 2000 WL 1898704, at *3. Therefore, VE testimony or other reliable sources of occupational information are often relied upon to "provide more specific information about jobs or occupations than the DOT." *Id.* Since the definition of a given occupation in the DOT tends to be in broad terms, the ALJ's affirmative responsibility to elicit a reasonable explanation for a conflict between VE testimony and the occupational information supplied by the DOT is only triggered when the conflict is "apparent." SSR 00-4P, 2000 WL 1898704, at *2. *See also Gutierrez v. Colvin*, 844 F.3d 804, 807-08 (9th Cir. 2016) ("[N]ot all potential conflicts between an expert's job suitability recommendation and the [DOT's] listing of 'maximum requirements' for an occupation will be apparent or obvious. [A]n ALJ need only follow up on those that are.").

Here, that duty was not triggered, as there is no apparent conflict between the VE's testimony that Plaintiff could perform his past relevant work as a security guard, despite his limitation of "occasional overhead reaching," and the DOT's general statement that being a security guard requires "frequent reaching." The Ninth Circuit rejected a similar claim of error in *Gutierrez*, where the VE testified that the claimant would be able to perform the job of cashier despite a restriction of no overhead reaching with her right arm, and the DOT listing for the cashier job states that it requires frequent reaching. 844 F.3d at

807. Finding no apparent or obvious conflict, the court explained that "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' not every job that involves reaching requires the ability to reach overhead." *Gutierrez*, 844 F.3d at 808 (quoting SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985)). Although an ALJ is required to ask follow-up questions of a VE "when the expert's testimony is either obviously or apparently contrary to the [DOT], [] the obligation doesn't extend to unlikely situations or circumstances[,]" and "[t]he requirement for an ALJ to ask follow[-]up questions is fact-dependent." *Gutierrez*, 844 F.3d at 808. Thus, because the *Gutierrez* court concluded that it is "uncommon" for most cashiers to have to reach overhead, "there was no apparent or obvious conflict between the expert's testimony and the [DOT]" and the ALJ "was entitled to rely on the expert's 'experience in job placement' to account for 'a particular job's requirements[.]'" *Id.* at 808, 809 (quoting SSR 00-4P, 2000 WL 1898704, at *2).

Similarly, here, while the "security guard" occupation may require "frequent reaching," it does not apparently and obviously require overhead reaching. Indeed, Plaintiff's attorney asked the VE on cross-examination during the hearing whether someone limited to "occasional handling, fingering, reaching in all directions" would be able to perform the security guard job. AR 54. The VE responded in the negative, explaining that "reaching and handling are both required frequently" in the security guard job, and thus, if one is "restricted to occasionally, that would preclude the past relevant work." AR 54. Therefore, the VE was clearly aware during the hearing that "reaching [is] . . . required frequently" in the security guard job, but he nonetheless opined that a person limited to only occasional *overhead* reaching could perform the job. AR 51. The ALJ, in turn, was permitted to rely on the VE's expertise to "provide more specific information" about the job's requirements than the DOT. SSR 00-4P, 2000 WL 1898704, at *3. The ALJ's opinion similarly reflects an awareness of the distinction between overhead reaching and reaching in all directions, and that he made an intentional decision to rely on the VE's testimony to determine the extent to which overhead reaching is required in the security guard job. Specifically, as discussed above, the ALJ found "that the vocational expert's

testimony is consistent with the DOT in issues the DOT addresses[,] **but in any issues not addressed by the DOT, such as overhead reaching** and flexion and rotation of the cervical spine, it is based on his professional expertise. Thus the undersigned accepts it in accordance with SSR 00-4P." AR 30 (emphasis added). Accordingly, the record does not support Plaintiff's argument that the ALJ failed to reconcile an apparent conflict between the DOT and the VE testimony. Instead, the record reflects that the VE drew a distinction between "overhead reaching" and "reaching in all directions" when testifying at the hearing about whether a hypothetical person with Plaintiff's RFC could perform the security guard job, and the ALJ adopted the same distinction in his decision. Neither the VE nor the ALJ considered the "frequent reaching" requirement in the DOT listing for the security guard job to be obviously at odds with Plaintiff's limitation to only occasional overhead reaching, and the ALJ was entitled to rely on VE testimony to that effect in reaching his conclusion of non-disability at step four. SSR 00-4P, 2000 WL 1898704, at *3; *see also Maxwell v. Saul*, 840 F. App'x 896, 898 (9th Cir. 2020) ("In general, a VE's testimony may be substantial evidence on its own to support a nondisability finding.").

Again, for the VE's testimony and the DOT listing to be "fairly characterized as a conflict," the conflict must be "obvious or apparent." *Gutierrez*, 844 F.3d at 808. Here, there is no obvious or apparent conflict posed by the VE's testimony that a person limited to "occasional overhead reaching" can still perform a job that requires "frequent reaching in all directions" per the DOT, particularly where it is clear from the record that both the VE and the ALJ drew a distinction between the two, and the ALJ expressly stated that the DOT does not address the issue of overhead reaching. *See* AR 30, 54. For that reason, the Court rejects Plaintiff's claim of error.

Finally, the Court agrees with Defendant that even if the ALJ erred by failing to reconcile an apparent conflict between the VE testimony and the DOT, such error would be harmless, because Plaintiff has not met his burden to show that he could not perform the security guard job as he actually performed it. Again, Plaintiff bears the burden of demonstrating that he can no longer perform his past relevant work, which is defined as

work performed either as the claimant "actually performed it" or as it is "generally performed in the national economy." 20 C.F.R. §§ 416.920(e); 416.920(f); *Pinto*, 249 F.3d at 844. If Plaintiff's RFC allows him to perform the actual functional demands and job duties of his past security guard job, a finding of non-disability would be warranted regardless of whether he can perform the functional demands and job duties of the occupation as generally performed. *Id.*; SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982).

Social Security Regulations "name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82–61, and the claimant's own testimony, SSR 82–41." *Pino*, 249 F.3d at 845. Although Plaintiff provided testimony to the ALJ that he was "a security guard at [a] hospital[,]" he did not testify during the hearing to the functional demands or duties that the job entailed. AR 40; *see generally* AR 36-56. Rather, the information about the actual demands of the security guard job comes from a Work History Report Plaintiff submitted to the agency in connection with his application for benefits. AR 165-67. In the Work History Report, in response to a prompt to "[d]escribe this job. What did you do all day?" Plaintiff wrote, "Writing Reports" and "Walking Premises." AR 167. He further stated that he did not use machines, tools, or equipment or technical knowledge or skills. *Id.* The form also prompted Plaintiff to indicate how many total hours per day he spent engaged in specified exertional activities, including walking, standing, sitting, climbing, stooping, kneeling, crouching, crawling, handling, reaching, and writing. *Id.* Plaintiff indicated that he walked 8 hours per day and that he was required to write, but did not state how many hours per day he engaged in writing. With respect to all other listed activities besides walking and writing, Plaintiff either wrote "N/A" or left the entries blank. *Id.* Relevant here, Plaintiff left the "Reach" entry blank. *Id.* Plaintiff also stated that he never lifted or carried anything as part of the job, even though the security guard job as generally performed requires the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. *Id.*; *see also* DOT 372.667-034, 1991 WL 673100. Accordingly, Plaintiff has not met his burden to show that he is unable to perform his past relevant work as actually

performed, since both his testimony and vocational report are silent on whether the job required overhead reaching as actually performed. AR 40, 167. Therefore, even if the ALJ erred by failing to reconcile a conflict between the VE's testimony that a person limited to only occasional overhead reaching could nonetheless perform the security guard job as *generally* performed, such error would be harmless, because Plaintiff has not established that his RFC precludes performance of his past security guard job as *actually* performed.

## V.    CONCLUSION

For the reasons set forth above, the Court finds that the ALJ did not commit reversible error in finding the Plaintiff was not disabled at step four.

Based on the foregoing analysis, the Court resolves the Joint Motion for Judicial Review (ECF No. 17) in Defendant's favor, **DENIES** Plaintiff's motion to reverse the judgment and remand the matter to the Commissioner, and **AFFIRMS** the Commissioner's final decision that Plaintiff is not disabled.

The Clerk shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated:  August 31, 2023

Honorable Allison H. Goddard
United States Magistrate Judge